UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| AUSTIN COOK, HARRISON FOLLETT, CHARLIE ALLEN, SOPHIE SANDERS, THOMAS BARTELL, JUSTIN ROBERTS, CARSON MCMASTER, ALONSO BARRANTES, BRADY PERKINS, JEREMY THOMPSON, PAIGE LUDDEN, KEATON HALES, TROOPER JOHNSON, RYAN GRIMMIUS, AIDAN WALSH, and RYAN HADLEY, individually and on behalf of persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVA MARKETING, LLC, a Utah limited liability company, and DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [96] PLAINTIFFS' MOTION TO APPROVE NOTICE LANGUAGE AND DENYING [97] PLAINTIFFS' MOTION TO ALLOW WEBSITE**<br><br>Case No. 2:23-cv-00632-DBB<br><br>District Judge David Barlow |

Before the court are Plaintiffs' [96] Motion to Approve Notice Language for FLSA Collective[1] and [97] Motion to Allow Website for Collective.[2]

## BACKGROUND

This case involves allegations of FLSA overtime violations by Plaintiffs and other prospective collective action members against Defendant Dava Marketing, LLC ("Dava").[3] On December 8, 2025, the court granted in part Plaintiffs' motion for conditional certification of a

---

[1] Motion to Approve Notice Language for FLSA Collective ("Notice Motion"), ECF No. 96, filed Dec. 22, 2025.
[2] Motion to Allow Website for Collective ("Website Motion"), ECF No. 97, filed Dec. 22, 2025.
[3] *See* First Amended Complaint ("Amended Compl.") ¶¶ 135–61, ECF No. 55, filed Feb. 3, 2025.

FLSA collective action.[4] In that order, the court conditionally certified a collective action using the following definition for the collective:

> All current and former employees who were paid by DAVA on an hourly basis to sell, design, and edit videos and manage online and social media content for DAVA Marketing LLC in the United States during the applicable limitations period and who worked more than forty (40) hours in any workweek.[5]

The court then approved Plaintiffs' request to send notice to prospective collective members via mail, email, and text message.[6] Plaintiffs' request for a notice website was denied without prejudice in the absence of specific website language and justification.[7]

Finally, the court approved in part Plaintiffs' Notice and Consent to Join Forms.[8] Plaintiffs were ordered to change a single sentence in the Consent to Join Form to better reflect the presence of multiple named plaintiffs.[9] They were also ordered to remove two sentences in the Notice form instructing prospective collective members to return the forms as soon as possible and to contact Plaintiffs' counsel in case of employer retaliation.[10] With these minor adjustments, the court ordered the parties to meet and confer within fourteen days and present the court with the updated forms as well as proposed language for the text message notice.[11] The parties were unable to reach an agreement, resulting in the motions for approval that are currently before the court.[12]

---

[4] *See* Order Granting in Part Plaintiffs' Motion for Conditional Certification of FLSA Collective Action ("Certification Order"), ECF No. 93, entered Dec. 8, 2025.
[5] *Id.* at 8.
[6] *Id.* at 9.
[7] *Id.*
[8] *Id.* at 13–14.
[9] *Id.*
[10] *Id.*
[11] ECF No. 94.
[12] Following Plaintiffs' reply brief, Dava filed an objection to the reply that essentially functions as a sur-reply. *See* Objection to Plaintiffs' Reply, ECF No. 105, filed Jan. 29, 2026. Plaintiffs then filed an additional reply to that

## STANDARD

The FLSA authorizes plaintiffs to bring a collective action for overtime wages on behalf of "themselves and other employees similarly situated."[13] "Unlike in a class action under Federal Rule of Civil Procedure 23, parties are added to and bound by a FLSA collective action on an 'opt-in' rather than 'opt-out' basis."[14] "This requires the sending of an accurate and timely notice concerning the pendency of the action so that other 'similarly situated' employees can make an informed decision about whether to join."[15]

## DISCUSSION

### I. Collective Action Website

Plaintiffs request an order allowing a dedicated website as part of the notice procedure for prospective collective participants.[16] They propose a website unique to this action that would allow collective members to input a PIN and Access ID to learn more about the case and opt in.[17] Plaintiffs argue that such a website would "greatly facilitate[]" the ability of prospective collective members to make informed decisions and to opt in.[18] Dava responds that the motion still does not provide any justification for why a website is necessary and that allowing a website would create other issues.[19]

---

objection. *See* Response to Objection to Plaintiffs' Reply, ECF No 107, filed Jan. 29, 2026. Because the court did not order any additional briefing on this matter, the objection and sur-reply will not be considered.
[13] 29 U.S.C. § 216(b).
[14] *Pichler v. Cotiviti, Inc*, No. 2:23-CV-0884-AMA, 2024 WL 3089897, at *3 (D. Utah 2024); *see also* 29 U.S.C. § 216 (b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought.").
[15] *Pichler,* 2024 WL 3089897 at *3.
[16] In its Certification Order, the court denied Plaintiffs' initial website request for lack of sufficient justification. *See* Certification Order 9. Because the court specified that the denial was without prejudice, it was not improper for Plaintiffs to renew their request here with additional explanation.
[17] Website Motion 3.
[18] *Id.* at 4.
[19] Opposition to Motion to Allow Website ("Website Opp'n") 1–2, ECF No. 99, filed Jan. 5, 2026.

The court agrees that Plaintiffs have not shown why a website is necessary in this case. Plaintiffs' sole explanation in their motion for why a website would increase notice sufficiency is that it would be more "compatible with the electronic world of computers, smart phones, email, text and web communications."[20] They further argue in their reply brief that a website would facilitate easy access by computer or smartphone.[21] But the court has already approved both email and text notice procedures in addition to regular mail.[22] Potential collective members who rely on electronic communication will be alerted about the collective action via text message and can electronically send their opt-in forms via email. The addition of a website does not appear to streamline or simplify the process in any meaningful way. Plaintiffs' renewed request for a website is therefore denied, and the language of the proposed notices must be adjusted accordingly.

## II.   Statute of Limitations

One of the parties' principal disputes regarding the language in Plaintiffs' amended notice is how the relevant statute of limitations should be calculated. Plaintiffs propose language indicating that any claim that accrued after September 14, 2020, may be valid.[23] Defendant responds that all claims that accrued after November 9, 2021, are barred as of the date its Opposition was filed and that even this date is a "moving target."[24]

---

[20] Website Motion 4.
[21] Reply in Support of Motion to Allow Website ("Website Reply") 9, ECF No. 104, filed Jan. 26, 2026.
[22] Certification Order 8–9.
[23] Notice Motion 3.
[24] Opposition to Motion to Approve Proposed Language for FLSA Collective ("Notice Opp'n") 6, ECF No. 100, filed Jan. 5, 2026.

The FLSA provides that, in cases of willful violations,[25] an action for unpaid overtime compensation is barred unless it is commenced within three years after the cause of action has accrued.[26] For plaintiffs named in the complaint who have consented to be parties, the action is commenced for purposes of the statute of limitations on the date when the complaint is filed.[27] In a FLSA collective action, other collective members' claims are only considered commenced on the date their written consent to join the action is filed with the court.[28] Until that time, the statute of limitations continues to run.

In this case, the initial Complaint was filed on September 14, 2023.[29] On December 12, 2023, the court entered an order staying the case as of December 4, 2023, and tolling all deadlines and statutes of limitations for all parties and potential collective members during the stay.[30] On January 29, 2025, the court lifted the stay and stopped the tolling of the statute of limitations as of the date of the order.[31]

Plaintiffs recognize that the court tolled the statute of limitations during the stay period and subsequently lifted that tolling.[32] However, their briefing seems to indicate a belief that some sort of "equitable tolling" is in effect.[33] They argue that "reason dictates" that none of the claims for which the statute of limitations was tolled have since expired because a second complaint

---

[25] The court has not yet made any determination of willfulness. But Plaintiffs allege that Dava's FLSA violations were willful. Amended Compl. ¶¶ 97, 145. Therefore, the parties and the court have presumed for notice purposes that the FLSA's longer, three-year statute of limitations applies. *See* Certification Order 7.
[26] 29 U.S.C. § 255(a).
[27] 29 U.S.C. § 256(a).
[28] 29 U.S.C. § 256(b).
[29] Compl., ECF No. 1, filed Sep. 14, 2023.
[30] Order Granting Stipulated Motion to Stay Proceedings ("Order Granting Stay") 1, ECF No. 16, entered Dec. 12, 2023.
[31] Order Lifting Stay 3, ECF No. 52, entered Jan. 29, 2025.
[32] Notice Motion 2–3.
[33] *Id.* at 3.

was quickly filed following the lifting of the tolled statute of limitations.[34] Yet the statute of limitations continues to run for all potential collective action members until their consent to join is actually filed with the court.[35] The FLSA provides no automatic tolling mechanism for such prospective collective members.[36]

Plaintiffs criticize Dava for arguing that the court "did not grant or extend equitable tolling of the statute of limitations to the present date" despite the court's "clear orders" to the contrary.[37] But they point to no court order that tolls the statute of limitations to the present date. Instead, they argue that the court's December 2023 order granting a stay established the date of the initial Complaint as tolling the statute of limitations for all potential collective members.[38] Not so. The court's order clearly tolled the statute of limitations *only* "during the stay period," effective as of December 4, 2023.[39] The statute of limitations for prospective collective action members is not tied to the dates of Plaintiffs' complaints.[40]

It is true that courts in the Tenth Circuit sometimes apply equitable tolling to potential opt-in plaintiffs in FLSA actions when certain conditions are met.[41] However, no such motion is before the court. To the contrary, Plaintiffs previously represented to the court that they were not "requesting that the Court extend the statute of limitations indefinitely and eternally," and

---

[34] *Id.*
[35] 29 U.S.C. § 256(b).
[36] 29 U.S.C. § 255.
[37] Reply in Support of Motion to Approve Proposed Language ("Notice Reply") 3–4, ECF No. 103, filed Jan. 26, 2026.
[38] *Id.* at 6.
[39] Order Granting Stay 1.
[40] *See* 29 U.S.C. § 256(b).
[41] *See Madsen v. Sidwell Air Freight, Dhl Express (USA) Inc.*, No. 1:23-CV-0008-JNP, 2024 WL 1157394, at *2 (D. Utah Mar. 18, 2024) (analyzing the three situations in which Tenth Circuit courts have found that FLSA equitable tolling is appropriate); *see also Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-CV-00512, 2021 WL 12313398, at *2 (D. Utah Sept. 30, 2021) (applying a five-factor test to determine when equitable tolling should apply in FLSA cases).

requested only that the statute of limitations be tolled until they filed their Amended Complaint.[42] Because the court's previous tolling order has been lifted, and because the court has not granted a motion for equitable tolling, the FLSA statute of limitations continues to run for prospective collective members. It was tolled for a 422-day period while the case was stayed. Therefore, for potential collective members who have not yet filed their consent to join this lawsuit, only claims that accrued within the last three years and 422 days may be brought.

### III. Notice Language

#### A. Notice Form

Finally, the parties dispute the language in Plaintiffs' Amended Notice form and email and text proposals.[43] In addition to language referencing a website and the statute of limitations, Dava objects to statements that plaintiffs who join will be represented by Mr. Edwards,[44] the inclusion of FAQs,[45] and language regarding "exemption and employee misclassifications."[46]

Before addressing Dava's objections, the court will first discuss Plaintiffs' implementation of the court's prior order. As already discussed, the court ordered Plaintiffs to remove two phrases from the Original Notice proposal and otherwise approved the Original Notice.[47] Plaintiffs implemented those changes in their Amended Notice proposal.[48] However, Plaintiffs also made numerous additional unapproved changes to the structure and language of the notice form in their amended proposal. While some of these changes appear to be an attempt

---

[42] *See* Plaintiffs' Reply in Support of Motion for Partial Lift of Stay 3, ECF No. 49, filed Oct. 16, 2024.
[43] *See generally* Notice Motion; Notice Opp'n.
[44] Notice Opp'n 7.
[45] *Id.* at 8.
[46] *Id.* at 7.
[47] Certification Order 14.
[48] *See* Amended Notice Form ("Amended Notice") 1, 2, ECF No. 96-1, filed Dec. 22, 2025.

to comply with the court's definition of the collective, most are unconnected to the court's previous order.[49] A second bite at the notice apple is not warranted here. Plaintiffs sought no leave to make additional changes and provide no reasoning for why they are seeking changes to the language they themselves proposed. The Original Notice proposal is approved pending minor changes.

Because the parties were not fully successful in executing the changes the court identified previously, the court has included the approved notice form on the docket with the necessary changes already made. To briefly summarize those changes, the court made the edits identified in its Conditional Certification Order, changed some language to reflect the court's definition of the collective, removed any references to a website or statute of limitations date, and corrected a few minor typographical errors.

The Original Notice form is approved with these changes. To the extent Dava's objections are still relevant to the language in the Original Notice, the court will address them. Regarding Dava's argument that the notice form references exemption and misclassifications, the court notes that these issues are relevant to Plaintiffs' claims.[50] They were only removed from the collective definition to broaden the scope of employee information that needed to be produced.[51] As to Dava's concern about the statements that opt-in plaintiffs will be represented by Mr. Edwards,[52] this language is accompanied by notice that the employee can also retain their

---

[49] *See* Original Notice Form ("Original Notice") 2–4, ECF No. 75-1, filed Sep. 19, 2025; *see also* Amended Notice 1–3 (eliminating and reorganizing many of the sections approved in the Original Notice and adding additional sections and language).
[50] *See* Amended Compl. ¶ 157.
[51] Certification Order 5–6.
[52] Notice Opp'n 7.

own attorney.[53] The court's order did not require the removal of language informing potential collective members of their options for representation in this action. Rather, the court refused to permit language soliciting employees to join a separate, potential retaliation lawsuit.[54]

Finally, the court has removed all references to the statute of limitations dates. As discussed above, the statute of limitations period will be different for each opt-in plaintiff depending on when their cause of action accrued and when their consent to join form is filed with the court.[55] Dava indicated in its briefing that it has provided Plaintiffs a list of employees going back three years and 422 days from the date of the court's certification order.[56] Plaintiffs may send the approved notice to every employee on the list. Then, the determination as to whether each opt-in plaintiff has a claim that accrued within the limitations period can be made on an individual basis once their consent form has been filed.

### B.     Consent to Join Form

Plaintiffs' Amended Consent Form proposal incorporates only small changes from the original in order to comply with the court's Certification Order.[57] It is approved.

### C.     Email Notice

The court approves Plaintiffs' proposed email notice text with the exception of one sentence about a claim website.[58] That sentence, "You may also file a claim through the following website: [Simpluris website]" must be removed.

---

[53] Original Notice 3.
[54] Certification Order.
[55] *See* 29 U.S.C. § 256(b).
[56] Notice Opp'n 6.
[57] Proposed Written Consent Form for Mailing, ECF No. 96-2, filed Dec. 22, 2025.
[58] Proposed Email Notice, ECF No. 96-3, filed Dec. 22, 2025.

### D. Text Notice

The court approves Plaintiffs' proposed text notice text with the exception of any reference to a claim website.[59] The penultimate sentence must be changed to read, "If you wish to participate in the case as a claimant for unpaid overtime wages, please check your email for additional information."

### ORDER

Plaintiffs' [97] Motion to Allow Website for Collective is DENIED. Plaintiffs' [96] Motion to Approve Notice Language for FLSA Collective is GRANTED in part pending the ordered changes.

Signed February 4, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[59] Proposed Text Notice, ECF No. 96-4, filed Dec. 22, 2025.